UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAMELA M. HICKOK,

                                          Petitioner,

              -vs-                                                    03-CV-434C

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                                          Respondent.

_____

        Plaintiff Pamela Hickok initiated this action pursuant to 42 U.S.C. § 405(g) to review

the final determination of the Commissioner of Social Security ("Commissioner") denying

her application for Social Security disability ("SSDI") benefits.  The Commissioner has filed

a motion for judgment on the pleadings (Item 6), and the plaintiff has cross-moved for the

same relief, pursuant to Fed. R. Civ. P. 12(c).  Item 9.  For the following reasons, the

Commissioner's motion is denied, and plaintiff's cross-motion is granted in part.  Because

I find the Commissioner's decision that plaintiff is able to return to her previous work is not

supported by substantial evidence, the matter is remanded for further proceedings.


                              **BACKGROUND**

        Plaintiff was born on January 12, 1956 (T. 104).[1]  She applied for SSDI benefits on

November 13, 1998, with an alleged disability onset date of March 22, 1998 (T.104).

Plaintiff alleges disability based on migraine headaches, asthma, back, neck, and leg pain,

carpal tunnel syndrome, irritable bowel syndrome, and high blood pressure (T. 118).  Her

_____

        [1]  References preceded by "T." are to page numbers of the administrative record
filed by defendant as part of the answer to the complaint.

application was denied initially on January 22, 1999 (T. 77-80), and upon reconsideration

on April 14, 1999 (T. 82-84).  Plaintiff requested an administrative hearing, which was held

before Administrative Law Judge ("ALJ") Richard D. Hines on March 15, 2000 (T. 24-58)

and August 23, 2000 (T. 59-73).   In a decision dated September 20, 2000, the ALJ

determined that plaintiff was not disabled (T. 16-21).

The ALJ's decision became the Commissioner's final determination on May 2, 2003,

when the Appeals Council declined plaintiff's request for review (T. 8-9).  On June 4, 2003,

plaintiff commenced this action seeking judicial review of the Commissioner's final

determination (Item 1).  The Commissioner filed an answer on September 2, 2003 (Item 3),

and moved for judgment on the pleadings on January 27, 2004 (Item 6).  Plaintiff filed a

cross-motion for judgment on the pleadings on April 29, 2004 (Item 9) on the grounds that

the decision is not supported by substantial evidence.

## DISCUSSION

**I.     Scope of Judicial Review**

The Social Security Act states that, upon district court review of the Commissioner's

decision, "[t]he findings of the Commissioner . . .  as to any fact, if supported by substantial

evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined

as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see*

*also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir.  1999).  Under these standards, the

scope of judicial review of the Commissioner's decision is limited, and the reviewing court

may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson,* 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,*167 F.3d at 773.

## II.  Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.

If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC"), based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"). *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since March 22, 1998, the alleged onset date of disability (T. 20). Plaintiff has a limited education and past work experience as a cashier, waitress, pharmacy technician, and home day care manager (T. 17). In reviewing plaintiff's medical records, the ALJ noted that plaintiff has a "long history of multiple somatic complaints with little in the way of objective clinical or laboratory findings to substantiate the alleged severity of her impairments." (T. 18). Plaintiff was injured in a motor vehicle accident on March 22, 1998, and thereafter complained of neck, back, and shoulder pain. She also suffers from a C4-5 disc herniation, migraine headaches, and asthma (T. 18). Accordingly, the ALJ found that plaintiff suffers from "severe" impairments for purposes of the regulations, but that plaintiff's

4

impairments, individually or in combination, did not meet or equal the requirements of the

Listings (T. 18).  Proceeding to the fourth step of the sequential evaluation process, the

ALJ found plaintiff able to meet the exertional demands of sedentary work with a sit/stand

option, no overhead use of her right upper extremity, and mild environmental restrictions

(T. 19).   The ALJ found that plaintiff could perform her past relevant work as a day care

manager (T. 19).   Accordingly, the ALJ concluded that plaintiff was not disabled for

purposes of the Social Security Act.

The Commissioner contends that the ALJ's findings are supported by substantial

evidence.  Plaintiff contends that the ALJ misapplied the established legal and regulatory

standards in failing to give the proper weight to the opinion of plaintiff's treating physician,

failing to credit her testimony regarding pain, and failing properly to assess plaintiff's RFC.

### III.    Treating Physician's Opinion

Plaintiff contends that the ALJ failed to give appropriate weight to the opinion of her

treating physician, Dr. Ghate.  In January 1999, Dr. Ghate stated that plaintiff suffers from

hypertension, migraine headaches, anxiety, asthma, and chronic back pain (T. 283).  Dr.

Ghate opined that plaintiff could lift no more than 10 pounds, stand or walk less than two

hours per day, and sit less than six hours per day, with a limitation on pushing/pulling

(T.279).  In February 2000, Dr. Ghate opined that plaintiff could occasionally lift up to 20

pounds, sit or stand two hours in an eight-hour workday, and was unable to stoop, crouch,

kneel, or crawl (T. 449-50).   In August 2000, Dr. Ghate completed an assessment of

plaintiff's physical capabilities in which he opined that plaintiff could sit for two to four

hours, walk for two to four hours, and is unable to lift any weight (T. 551-55).  Plaintiff

contends that based on the August 2000 opinion of Dr Ghate, she is unable to do even sedentary work and is totally disabled.

It is well settled that a treating physician's opinion on the nature and severity of the claimant's impairment is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir. 1999); *Clark v. Commissioner,* 143 F.3d 115, 188 (2d Cir. 1998).  The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan, supra; Coyle v. Apfel,* 66 F. Supp.2d 368, 377 (N.D.N.Y. 1999).  The factors which the ALJ must consider in determining the weight given to treating physicians' opinions include the length of the treatment relationship, the specialization of the physician, the supportability and consistency of the opinion with the record as a whole, and any other relevant factors.   20 C.F.R. §416.927(d)(2)-(6).  Thus, the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion rendered by a treating physician, or reject the opinion without providing a good reason for doing so.  *Rosa v. Callahan,* 168 F.3d at 79; *Coyle v. Apfel,* 66 F. Supp.2d at 377.

Here, the ALJ gave less than controlling weight to the August 2000 opinion of Dr. Ghate because he found that it was not based upon objective medical findings (T. 19).

Following plaintiff's auto accident in March 1998, an MRI of the cervical spine indicated a herniated disc at C4-5, yet it did not appear to impinge on the spinal cord or nerve roots (T. 178, 186).   Plaintiff was seen by Dr. George Kalonaros who found her to be "neurologically intact . . . except for her subjective sensory diminution" (T. 180).   In August 1998, Dr. Patrick Hughes examined plaintiff and found that she sustained an acute cervical and lumbosacral strain in the accident, but that her prognosis was good and she was not disabled and could return to work with no restrictions (T. 493).

In January 1999, Dr. P. Mahaboob, a state review physician, determined that plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, and sit, stand, and walk for about six hours in an eight-hour workday (T. 154-61).  This assessment was affirmed by another state review physician, Dr. Alberta Micale (T. 161).

In May 2000, Dr. Pol Akman performed a consultative orthopedic examination and found that plaintiff suffers mild restriction in her upper right extremity, and moderate restriction as to lifting, pushing, pulling, tugging, and ambulation (T. 531).

In his August 2000 assessment, Dr. Ghate opined that plaintiff could rarely or never lift any weight and must rest up to four hours in an eight-hour workday (T. 553-54).  In one part of the assessment, Dr. Ghate found that plaintiff could sit for only two hours (T. 554), while in another section of the assessment, he opined that she could sit for up to four hours in an eight-hour workday (T. 552).  This assessment was based on Dr. Ghate's diagnosis of plaintiff's chronic back pain, migraine headaches, anxiety, and asthma (T. 555). However, Dr. Ghate's opinion is not supported by any objective medical findings and is inconsistent with other substantial evidence in the record, including his own assessments

7

which indicate that plaintiff can perform at least sedentary work.  Accordingly, the ALJ

properly refused to give controlling weight to this opinion of Dr. Ghate.

## IV.    Plaintiff's Subjective Complaints

Plaintiff further argues that the ALJ failed properly to consider her subjective

complaints of pain and limitation.  The standard for evaluating a claimant's subjective

complaints has been incorporated into the Social Security Act as follows:

> An individual's statement as to pain or other symptoms shall not alone be
> conclusive evidence of disability . . .; there must be medical signs and
> findings...which show the existence of a medical impairment that results from
> anatomical, physiological, or psychological abnormalities which could
> reasonably be expected to produce the pain or other symptoms alleged and
> which, when considered with all evidence required to be furnished..., would
> lead to a conclusion that the individual is under a disability.

42 U.S.C. §423(d)(5)(A).

When an ALJ discredits hearing testimony, he or she must articulate the reasons

for doing so "with sufficient specificity to permit intelligible plenary review of the record."

*Williams on behalf of Williams v. Bowen,* 859 F.2d 255, 260-61 (2d Cir. 1988).  Thus:

> In instances in which the adjudicator has observed the individual, the
> adjudicator is not free to accept or reject that individual's subjective
> complaints solely on the basis of such personal observations.  Rather, in all
> cases in which pain is alleged, the determination or decision rationale is to
> contain a thorough discussion and analysis of the objective medical evidence
> and the nonmedical evidence, including the individual's subjective complaints
> and the adjudicator's personal observations.  The rationale is then to provide
> a resolution of any inconsistencies in the evidence as a whole and set forth
> a logical explanation of the individual's capacity to work.

Social Security Ruling 88-13, 1998 WL 236011 (SSA), at *1, *quoted in Thorp v. Apfel,* 1998

WL 683767, at *5 (W.D.N.Y. September 17, 1998).  After weighing the objective medical

evidence, the claimant's demeanor, and other indicia of credibility, as well as any

inconsistencies between the medical evidence and a claimant's subjective complaints, the

ALJ may decide to disregard the claimant's subjective opinion with respect to the degree

of impairment.  *See* 29 C.F.R. §404.1529(c)(4); *see also Smith v. Apfel,* 69 F. Supp.2d

370, 379 (N.D.N.Y. 1999).

In this case, the ALJ found that although plaintiff suffered from a variety of ailments,

the objective clinical and laboratory evidence did not "substantiate the alleged severity" of

plaintiff's impairments (T. 18).  Plaintiff's "alleged physical problems are also in contrast to

her self-described daily activities which are fairly normal" (T. 19).  Those activities include

housework, cooking, laundry, driving, visiting friends, attending church, volunteer work, and

playing guitar.

Here, the ALJ found that plaintiff's subjective complaints were not substantiated by

objective clinical or laboratory findings, and that plaintiff had the residual functional capacity

to perform sedentary work.  These findings are consistent with the requirements set forth

in the Social Security Act, as interpreted by the pertinent regulations, rulings, and case law

with respect to the ALJ's assessment of the plaintiff's credibility.  Accordingly, the ALJ did

not err in rejecting plaintiff's subjective complaints as a basis for her disability claim.

## V.  Plaintiff's Previous Work

To meet her burden of proof at step four of the disability determination process, a

claimant must demonstrate not only that she is unable to return to her former work, but

also that she is unable to return to her former type of work.  *Jock v. Harris*, 651 F.2d 133,

135 (2d Cir.1981) (quoting *Pelletier v. Secretary of Health, Educ. & Welfare*, 525 F.2d 158,

160 (1st Cir.1975)); *French v. Apfel,* 62 F. Supp.2d 659, 663-64 (N.D.N.Y.1999).  Thus, the

ALJ must first define the claimant's residual functional capacity ("RFC") and, second, determine whether this RFC will permit the claimant to meet the actual physical and mental demands of the type of work that she previously performed. *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir.1999).  The ALJ may discharge his responsibilities with regard to the second prong by referring to the Dictionary of Occupational Titles ("DOT") for a definition of a particular job as it is ordinarily performed throughout the national economy. *Id.; see also* Social Security Ruling 82-61, 1982 WL 31387, at *2 (S.S.A.).

In this case, the ALJ found, in reliance on the testimony of the vocational expert ("VE"), that plaintiff possesses the RFC to perform sedentary work and that she could return to her former work as a day care manager (T. 19).  In her application for benefits, plaintiff stated that she operated a day care facility in her home from 1988 until 1990 (T. 131).  Plaintiff was licensed by Onondaga County, and was responsible for the well-being of the children in her home. She taught crafts, music, and "basic learning," kept her business records, communicated with parents, and devised menus (T. 135).  During the course of her work as a day care manager, plaintiff walked about three hours per day, stood three to four hours per day, sat two hours per day, and lifted up to 50 pounds occasionally (T. 135).

At the supplemental hearing, the VE testified that the position of day care manager was a skilled sedentary position, based on the job description in the DOT.  DOT listing #092.167-010, the occupational listing cited by the VE, describes the position of Day Care Center Director.  That position involves directing the activities and staff of a day care center, and is a professional or managerial position.  The Day Care Center Director must prepare and submit a budget, authorize purchases of instructional materials, interview and

recommend the hiring of teaching and service staff, confer with parents and staff on issues of policy, activities, and problems, review facility activities to ensure conformance with applicable law, and may perform teaching duties in the absence of teaching staff.  The position of Day Care Center Director is classified as sedentary work.[2]  *See* Dictionary of Occupational Titles (4th Ed., Rev. 1991), at www.oalj.dol.gov.  In contrast, the position of Day Care Teacher, DOT # 092.277-018, involves the planning and instruction of activities for children to stimulate growth in language, social and motor skills.  The position of Day Care Teacher is classified as light work.[3]

The ALJ's conclusion that plaintiff could return to her previous work as a day care operator or manager is not based on substantial evidence.  In order to determine whether plaintiff has met her burden at step four of the disability determination process, the ALJ must first define plaintiff's past relevant work and then analyze whether plaintiff can satisfy the physical and mental demands of this work, either as she actually performed it or as it is defined in the DOT.  *French v. Apfel,* 62 F. Supp. 2d at 664.  Plaintiff's previous work, which involved directly caring for a group of children in her home, was not sedentary work, but was comparable to the light work of a Day Care Teacher.  The DOT listing cited by the

---

[2]   "Sedentary" work is defined as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

[3] "Light" work is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 416.967(b).

VE and relied upon by the ALJ described a sedentary, managerial position that did not involve the direct care of children.  Thus, the ALJ misapplied the law in concluding that plaintiff could return to her previous work, and by relying on the VE's opinion that plaintiff's previous work was the sedentary managerial position of Day Care Center Manager as described in the DOT.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405(g)). Remand for further development of the record is appropriate "where the administrative record contains gaps," *id.*, or where "the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir.1999) (quotation omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996) (citation omitted).  In contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability," and further development of the record would not serve any purpose. *Rosa*, 168 F.3d at 83; *Parker v. Harris*, 626 F.2d 225,  at 235 (2d Cir. 1980).  Here, having erroneously found that plaintiff could return to her previous work, the ALJ did not reach the fifth step in the sequential review process.   Under the circumstances, remand for further proceedings is appropriate.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 6) is denied, and plaintiff's cross-motion (Item 9) is granted.  The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

So ordered.

\s\ John T. Curtin

JOHN T.  CURTIN

United States District Judge

Dated: April    28    , 2005

p:\opinions\03-434.apr1105